# EXHIBIT A

**TO 3M COMPANY'S NOTICE OF REMOVAL**

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 2 of 55 PageID #: 11

SUPREME COURT OF THE STATE OF NEW YORK
SUFFOLK COUNTY

---------------------------------------------------------------------X

ISAAC GREEN and ARNEAL GREEN; ELIZABETH
LIGGON and JEROME LIGGON; CATHY GREEN and
AL GREEN; JASON ROBINSON; YVONNE GREEN and
AARON GREEN; MARK GREEN; STACY GREEN and
ANTHONY GREEN; THEODORA LIGGON and
GREGORY LIGGON; and MICHELLE BLOXON,

                         *Plaintiffs,*

-against -

THE 3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co), TYCO FIRE PRODUCTS L.P.,
successor-in-interest to THE ANSUL COMPANY;
ANGUS FIRE; NATIONAL FOAM; BUCKEYE FIRE
PROTECTION CO.; CHEMGAURD; and COUNTY OF
SUFFOLK,

                         *Defendants.*

---------------------------------------------------------------------X

Index No. _____/2017

SUMMONS

Trial by jury is desired in the
County of Suffolk

Venue is designated pursuant to
CPLR §§ 503(a), (c), & 507 in
that Plaintiffs reside in this
county, at least one Defendant has
its principal office in this county,
and that the judgment demanded
would affect the possession and
use or enjoyment of real property
situated in the County of Suffolk.

## CLASS ACTION COMPLAINT WITH INDIVIDUAL CLAIMS AND DEMAND FOR JURY TRIAL

Plaintiffs, ISAAC GREEN and ARNEAL GREEN; ELIZABETH LIGGON and JEROME LIGGON; CATHY GREEN and AL GREEN; JASON ROBINSON; YVONNE GREEN and AARON GREEN; MARK GREEN; STACY GREEN and ANTHONY GREEN; THEODORA LIGGON and GREGORY LIGGON; and MICHELLE BLOXON, by and through their undersigned counsel, hereby files this Class Action Complaint, individually, and on behalf of all others similarly situated, with individual claims and makes these allegations based on information and belief and/or which are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery against Defendants, THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co), TYCO FIRE PRODUCTS L.P., successor-in-

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 3 of 55 PageID #: 12

interest to THE ANSUL COMPANY; ANGUS FIRE; NATIONAL FOAM; BUCKEYE FIRE PROTECTION CO.; CHEMGAURD and COUNTY OF SUFFOLK, (collectively "Defendants") as follows:

## INTRODUCTION

**The Contamination of the Westhampton, Westhampton Beach, and Quiogue Communities**

1.   The communities of Westhampton, Westhampton Beach, and Quiogue (the "Communities") are all located in eastern Suffolk County, Long Island. These communities receive their water from a sole source aquifer.

2.   The Communities are nearby and downgradient of the Gabreski Air National Guard Base which is a part of the Francis S. Gabreski Airport located in the Town of Southampton in Suffolk County on the eastern end of Long Island.

3.   Airports as well as bases operated by the U.S. Air Force and other branches of the military, have used aqueous firefighting foams ("AFFF") and other materials containing perfluorooctanesulfonic acid ("PFOS") and related fluorochemicals that can degrade to perfluorooctanoic acid ("PFOA") or PFOS.

4.   These sites have been linked to the contamination of surface and groundwater with PFOA, PFOS and other perfluorinated chemicals ("PFCs") throughout the country.

5.   PFOA and PFOS that originated and was released from the Gabreski Air National Guard Base and Francis S. Gabreski Airport have contaminated the sole source aquifer relied upon by the surrounding Communities.

6.   PFOA has been detected in levels exceeding the current EPA Health Advisory Limit of 70 parts per trillion (ppt) in the Communities and aquifer that provides water to these communities through both municipal water systems and private wells.

2

**Health Effects of PFOS and PFOA Exposure**

7.      PFOA, also known as C8 has been studied extensively by among others, a Science Panel that was formed out of a class action settlement from a lawsuit arising from contamination from DuPont's Washington Works located in Wood County West Virginia. This panel consisted of three epidemiologists who were specifically tasked with determining whether there was a probably link between C8 and human diseases. The panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

**Manufacture and Use of Aqueous Film Forming Foam ("AFFF")**

8.      Defendants The 3M Company (f/k/a Minnesota Mining and Manufacturing, Co), Tyco Fire Products L.P., successor-in-interest to The Ansul Company; Angus Fire; National Foam, Buckeye Fire Protection Co., and Chemguard (collectively referred to herein as the "Manufacturing Defendants") manufactured AFFF that contained fluorochemical surfactants, including PFOS, PFOA, and/or certain other PFC's that degrade into PFOS or PFOA. As the manufacturers of AFFF, the Defendants knew or should have known that the inclusion of PFCs in AFFF presented an unreasonable risk to human health, ground and surface water, and the environment. Defendants also knew or should have known that PFCS are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released to the environment.

9.      The Defendants marketed and sold their products with knowledge that large quantities of toxic, PFCs-containing AFFF would be used in training exercises and in emergency situations at military bases and airports, including the Gabreski Air National Guard Base, in such a manner that dangerous chemicals would be released into the environment.

10.     The Defendants marketed and sold their products with knowledge that large quantities of toxic, PFCs-containing AFFF would be stored in fire suppressant systems and tanks on Air Force Bases and at airports and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the environment.

**Suffolk County's Ownership of Francis S. Gabreski Airport**

11.     Francis S. Gabreski Airport, formerly known as Suffolk County Airport, is on Old Riverhead Road, approximately two miles north of the Atlantic Ocean shoreline in Westhampton Beach.

12.     Gabreski Air National Guard Base is a part of the Francis S. Gabreski Airport.

13.     At all times relevant herein, Defendant Suffolk County has been the owner and operator of Francis S. Gabreski Airport.

14.     Upon information and belief, the New York Air National Guard ("NYANG") leases 88.5 acres of runways, hangars, and maintenance/service facilities on the southwest side of the Airport from the County.

15.     Francis S. Gabreski Airport also includes the current 0.5 acre Airport Fire Training Area which was utilized by NYANG for decades.

16.     The U.S. Army developed the airfield in 1941 as the Westhampton Beach Army Airfield to use for gunnery training for World War II. In 1951 the U.S. Air Force reactivated the airfield as the Suffolk County Air Force Base. The Air Force deactivated and closed the base in 1969 and Defendant Suffolk County began operating the airfield as Suffolk County Airport. The NYANG base opened in June 1970.

17.     Upon information and belief, AFFF has been used at the Gabreski Air National Guard Base and Francis S. Gabreski Airport since 1970, which contains both PFOA and PFOS.

4

Case 2:17-cv-02566-JS-AYS     Document 1-1     Filed 04/28/17     Page 6 of 55 PageID #:
15

At Gabreski Air National Guard Base and Francis S. Gabreski Airport, AFFF was used at crash

sites and at the Airport Fire Training Areas, among other locations.

18.     The direction of groundwater flow beneath the Airport (in the upper glacial

aquifer) is toward the south-southeast. Depth to groundwater averages 35 to 40 ft below ground

surface (bgs).

**Class and Plaintiffs' Exposure and Damages**

19.     Plaintiffs have suffered personal injury, bioaccumulation of PFOA and property

damage as a result of the PFOA and PFOS contamination of their water supplies by AFFF that

has entered the communities of Westhampton, Westhampton Beach, and Quiogue.

20.     The Plaintiffs and the class, as residents in the communities in Westhampton,

Westhampton Beach, and Quiogue area, have been unknowingly exposed for many years to

PFCs including at concentrations hazardous to their health.

21.     The properties of the Plaintiffs and the class have been damaged as a result of the

presence of PFC's present in their potable water.

22.     Plaintiffs and the Class seek recovery from Defendants for injuries, damages and

losses suffered by the Plaintiffs as a result of exposure to the introduction of PFOA, PFOS and

other toxic substances into the drinking water of the Westhampton, Westhampton Beach, and

Quiogue area, in an amount to be determined at trial, exclusive of interest, costs, and attorneys'

fees.

<u>**JURISDICTION AND VENUE**</u>

23.     Upon information and belief, this Court has personal jurisdiction over the

Manufacturing Defendants as each of them is doing business in New York by manufacturing,

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 7 of 55 PageID #: 16

distributing, producing and marketing products, services and/or materials in this State and/or to this State.

24.     At all relevant times to the Complaint, Defendants conducted substantial business in New York and availed themselves to the legal rights in New York thereby.

25.     Upon information and belief, Defendants maintain websites accessible to New York residents.

26.     Defendants have systematic and continuous commercial contacts with New York to establish jurisdiction over them pursuant to CPLR 302.

27.     This Court has personal jurisdiction over the defendants as each of them are doing business in New York and engage in business in New York such that it is reasonably foreseeable that they would be subject to jurisdiction of the courts of this State.

28.     This case is properly venued in this Court pursuant to CPLR 503(a), due to the residence of Plaintiffs because they reside in Suffolk County.

29.     This case is properly venued in this Court because Defendant Suffolk County owned and/or operated Francs S. Gabreski Airport at the time of the disposal and/or release of hazardous and toxic substances.

30.     This case is properly venued in this Court because the actions of the Defendants and the injuries and damages alleged herein all occurred in the County of Suffolk, New York.

<u>**PARTIES**</u>

**CLASS REPRESENTATIVES**

    **a.     Diminution in Value of Property Class**

31.     Proposed class representatives Plaintiffs Isaac Green and Arneal Green are residents of Westhampton, New York, who currently reside at 76 Hazelwood Avenue, Westhampton, New York, 11978.

6

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 8 of 55 PageID #: 17

32.     Isaac Green and Areal Green own the property at 76 Hazelwood, and have lived there since 1976. They received their water from a private well from 1976 until December 2016.

33.      In July 2016, elevated levels of PFOA were found in the private well at 76 Hazelwood Avenue.

34.     In December 2016, as a result of the PFOA contamination in their private well, Isaac Green and Arneal Green, and others similarly situated, were forced to close their private well and connect to Suffolk County Water Authority.

35.     As a result of the stigma of the PFOA contamination and being forced to connect to Suffolk County Water Authority to purchase water, Isaac Green and Areal Green's, and others similarly situated, have suffered a diminution in value of their property.

36.     Isaac Green and Arneal Green, and others similarly situated, have been exposed to PFOA, have elevated levels of PFOA in their blood, and are at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

37.     Isaac Green and Arneal Green, and others similarly situated have a fear of developing debilitating injuries as a result of their exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

38.     PFOA has entered 76 Hazelwood Avenue, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

39.     On October 22, Isaac Green and Arneal Green filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

40.     On January 3, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Isaac Green and Arneal Green.

**b.     Medical Monitoring Class**

41.     Plaintiff Mark Green is a former resident of Westhampton, New York, who currently resides at 23 Quiogue Avenue, Flanders, New York, 11901.

42.     Mark Green lived at 76 Hazelwood Avenue, Westhampton, New York from 1981 until 2008.

43.     During his time at 76 Hazelwood Avenue, the property received its water from a private well. In July 2016, elevated levels of PFOA were found in the private well at 76 Hazelwood Avenue.

44.     Mark Green, and those similarly situated, has been exposed to PFOA, has elevated levels of PFOA in his blood, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

45.     Mark Green, and those similarly situated, has a fear of developing debilitating injuries as a result of his exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

46.     While Mark Green was living at 76 Hazelwood Avenue, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

47.     On October 22, Mark Green filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

8

48.     On January 6, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Mark Green.

**INDIVIDUAL CLAIMS**

49.     Plaintiffs Elizabeth Liggon and Jerome Liggon are former residents of Westhampton, New York, who currently reside at 201 Bayberry Path, Riverhead, New York, 11978.

50.     Elizabeth Liggon and Jerome Liggon lived at 60 Peters Lane, Westhampton, New York from 2002 until 2012. During their time at 60 Peters Lane, the property received its water from a municipal well.

51.     Elizabeth Liggon and Jerome Liggon have been exposed to PFOA, have elevated levels of PFOA in their blood, have suffered personal injuries as a direct result of their exposure to PFOA, and are at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

52.     Elizabeth Liggon and Jerome Liggon have a fear of developing debilitating injuries as a result of their exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

53.     While living at 60 Peters Lane, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

54.     On October 22, Elizabeth Liggon and Jerome Liggon filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

9

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 11 of 55 PageID #:
20

55.     On January 3, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Elizabeth Liggon and Jerome Liggon.

56.     Plaintiff Al Green is a former resident of Westhampton, New York, who currently resides with his wife Cathy Green at 1340 W. Main Street, Riverhead, New York, 11901.

57.     Al Green lived at 76 Hazelwood Avenue, Westhampton, New York from 1976 until 2011. During his time at 76 Hazelwood Avenue, the property received its water from a private well.

58.     In July 2016, elevated levels of PFOA were found in the private well at 76 Hazelwood Avenue.

59.     Al Green has been exposed to PFOA, has elevated levels of PFOA in his blood, have suffered personal injuries as a direct result of his exposure to PFOA, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

60.     Al Green has a fear of developing debilitating injuries as a result of his exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

61.     While Mr. Green was living at 76 Hazelwood Avenue, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

62.     As a result of Al Green's exposure to PFOA, Cathy Green was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

10

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 12 of 55 PageID #:
21

63.     On October 22, Al Green and Cathy Green filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

64.     On January 4, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Al Green and Cathy Green.

65.     Plaintiff Jason Robinson is a former resident of Westhampton, New York, who currently resides at 76 Riverside Avenue, Mastic Beach, New York, 11951.

66.     Jason Robinson lived at 99 Peters Lane, Westhampton, New York from 1974 until 2006. During his time at 99 Peters Lane, the property received its water from a municipal well.

67.     Jason Robinson has been exposed to PFOA, has elevated levels of PFOA in his blood, have suffered personal injuries as a direct result of his exposure to PFOA, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

68.     Jason Robinson has a fear of developing debilitating injuries as a result of his exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases. While living at 99 Peters Lane, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

69.     On October 22, Jason Robinson filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 13 of 55 PageID #:
22

70.     On January 4, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Jason Robinson.

71.     Plaintiff Aaron Green is a former resident of Westhampton, New York, who currently resides with his wife Yvonne Green at 65 Gooridge Avenue, Riverhead, New York, 11901.

72.     Aaron Green lived at 76 Hazelwood Avenue, Westhampton, New York from 1974 until 1990. During his time at 76 Hazelwood Avenue, the property received its water from a private well.

73.     In July 2016, elevated levels of PFOA were found in the private well at 76 Hazelwood Avenue.

74.     Aaron Green has been exposed to PFOA, has elevated levels of PFOA in his blood, have suffered personal injuries as a direct result of his exposure to PFOA, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases. Aaron Green has a fear of developing debilitating injuries as a result of his exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

75.     While Aaron Green was living at 76 Hazelwood Avenue, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

76.     As a result of Aaron Green's exposure to PFOA, Yvonne Green was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

77.     On October 22, Aaron Green and Yvonne Green filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

78.     On January 5, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Aaron Green, and on January 11, 2017 for Yvonne Green.

79.     Plaintiff Anthony Green is a former resident of Westhampton, New York, who currently resides with his wife Stacy Green at 308 Decatur Avenue, Shirley, New York, 11967.

80.     Anthony Green lived at 76 Hazelwood Avenue, Westhampton, New York from 1974 until 1993. During his time at 76 Hazelwood Avenue, the property received its water from a private well.

81.     In July 2016, elevated levels of PFOA were found in the private well at 76 Hazelwood Avenue.

82.     Anthony Green has been exposed to PFOA, has elevated levels of PFOA in his blood, have suffered personal injuries as a direct result of his exposure to PFOA, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

83.     Anthony Green has a fear of developing debilitating injuries as a result of his exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

84.     While Anthony Green was living at 76 Hazelwood Avenue, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

13

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 15 of 55 PageID #: 24

85.     As a result of Anthony Green's exposure to PFOA, Stacy Green was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

86.     On October 22, Anthony Green and Stacy Green filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

87.     On January 6, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Anthony Green, and on January 23, 2017 for Stacy Green.

88.     Plaintiffs Theodora Liggon and Gregory Liggon are former residents of Westhampton, New York, who currently reside at 11 Short Street, Flanders, New York, 11901.

89.     Theodora Liggon lived at 70 Hazelwood Avenue, Westhampton, New York from 1990 until 2000. During his time at 52 Hazelwood Avenue, the property received its water from a municipal supply well.

90.     Gregory Liggon lived at 52 Hazelwood Avenue, Westhampton, New York from 1960 until 1996. During his time at 52 Hazelwood Avenue, the property received its water from a municipal supply well.

91.     Theodora Liggon and Gregory Liggon have been exposed to PFOA, have elevated levels of PFOA in their blood, have suffered personal injuries as a direct result of their exposure to PFOA, and are at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune disease.

92.     Theodora Liggon and Gregory Liggon have a fear of developing debilitating injuries as a result of their exposure to PFOA, including but not limited to effects on the liver and

14

FILED: SUFFOLK COUNTY CLERK 03/27/2017 05:52 PM    INDEX NO. 605497/2017

NYSCEF DOC. NO. 2    Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 16 of 55 PageID #:    RECEIVED NYSCEF: 03/27/2017
25

immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

93.     While Theodora Liggon and Gregory Liggon were living at 70 Hazelwood Avenue and 52 Hazelwood Avenue, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

94.     On October 22, Theodora Liggon and Gregory Liggon filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

95.     On January 9, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Theodora Liggon and Gregory Liggon.

96.     Plaintiff Michelle Bloxon is a former resident of Westhampton, New York, who currently resides at 77 Woodroad Trail, Flanders, New York, 11901.

97.      Michelle Bloxon lived at 22 Meetinghouse Road, Westhampton, New York from 1964 until 2000. During her time at 22 Meetinghouse Road, the property received its water from a private well.

98.     Michelle Bloxon has been exposed to PFOA, has elevated levels of PFOA in her blood, have suffered personal injuries as a direct result of her exposure to PFOA, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

99.     Michelle Bloxon has a fear of developing debilitating injuries as a result of her exposure to PFOA, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, kidney cancer, and other autoimmune diseases.

15

100.    While Michelle Bloxon was living at 22 Meetinghouse Road, PFOA entered the property, including but not limited to the accumulation of PFOA in the pipes, faucet, showerheads, and appliances.

101.    On October 22, Michelle Bloxon filed a Notice of Claim against Defendant County of Suffolk pursuant to General Municipal Law (GML) Section 50-e for the injuries alleged herein.

102.    On January 25, 2017, Defendant County of Suffolk conducted a hearing pursuant to GML Section 50-h of Michelle Bloxon.

**DEFENDANTS**

103.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

104.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

105.    Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

16

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 18 of 55 PageID #: 27

106.    Defendant 3M Company ("3M") is, upon information and belief, a Delaware corporation and does business throughout the United States, including conducting business in New York.

107.    At all times relevant herein, 3M sold Aqueous Film Forming Foam (AFFF) used to fight fires at numerous military bases, airports, and other locations throughout the country.

108.    Defendant 3M is an American multinational corporation based in Maplewood, Minnesota. 3M was founded in 1902 as the Minnesota Mining and Manufacturing Company.

109.    With approximately $30 billion in annual net sales, 3M employs approximately 90,000 people, operates in approximately 70 countries, people and produces more than 55,000 products.

110.    Defendant Tyco Fire Products, L.P. (hereinafter "Tyco") is a limited partnership organized and existing under the laws of the State of Delaware, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

111.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly knows as The Ansul Company (hereinafter "Ansul ") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul.").

112.    At all times relevant, Tyco/Ansul manufactured and/or distributed and sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFCs.

113.    At all times relevant, Tyco/Ansul sold Aqueous Film Forming Foam (AFFF) used to fight fires at numerous military bases, airports, and other locations throughout the country.

114.    National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania

17

FILED: SUFFOLK COUNTY CLERK 03/27/2017 05:52 PM          INDEX NO. 605497/2017

NYSCEF DOC. NO. 2          Case 2:17-cv-02566-JS-AYS          Document 1-1          Filed 04/28/17          Page 19 of 55 PageID #:          RECEIVED NYSCEF: 03/27/2017
28

corporation, having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

115.    At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFCs.

116.    Defendant Angus Fire is part of Angus International with its corporate headquarters in Bentham in the United Kingdom.

117.    Angus Fire has a place of business located in the United States at 141 Junny Road, Angier, NC 27501.

118.    At all times relevant to the present litigation Angus Fire was engaged in the manufacture, marketing, and sale of AFFF that contained PFOA, PFOS, and other toxic substances.

119.    Defendant Buckeye Fire Equipment Company is a North Carolina corporation with its principal place of business at 110 Kings Road, Mountain, NC 28086.

120.    At all times relevant to the present litigation Buckeye Fire Equipment Company was engaged in the manufacture, marketing, and sale of AFFF that contained PFOA, PFOS, and other toxic substances.

121.    Defendant Chemguard is a Wisconsin corporation having its principal place of business at One Stanton Street, Marinette, WI 54143.

122.    At all times relevant to the present litigation Chemguard was engaged in the manufacture, marketing, and sale of AFFF that contained PFOA, PFOS, and other toxic substances.

123.    The Manufacturing Defendants are subject to the jurisdiction of this Court pursuant to CPLR § 302.

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 20 of 55 PageID #:
29

124.    Defendant Suffolk County is a municipal corporation organized to the laws of the State of New York, and is a political subdivision of the State.

125.    On October 20, 2016, Plaintiffs filed a Notice of Claim against Defendant Suffolk County pursuant to New York Gen. Mun. Law. §50-e. Plaintiffs' claims against Defendant Suffolk County arose on or about July 22, 2016 when Suffolk County issued a press release entitled "*Water Quality Advisory for Private-Well Owners in Areas of Westhampton*." Through this press release, Defendant Suffolk County announced that PFCs were detected in public and private supply wells in the vicinity of Gabreski Air National Guard Base and Francis S. Gabreski Airport.

126.    Plaintiffs and proposed class representatives have complied with all procedural requirements under New York Gen. Mun. Law §§50-e, h before bringing the instant actions.

127.    At all times relevant to the present litigation, Defendant Suffolk County was the owner of the property and operator of Francis S. Gabreski Airport where AFFF firefighting foam was used and subsequently discharged into the surrounding environments, injuring Plaintiffs and the putative subclasses.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

**PFOA Background**

128.    Perfluorooctanoic acid (PFOA, also known as C8 or perfluorooctanoate) is a man-made, manufactured chemical not found in nature that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals (PFC's). These chemicals were and are used to make household and commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water as well as other uses.

129.    In 1947, 3M began producing PFOA via electrochemical fluorination.

19

INDEX NO. 605497/2017
RECEIVED NYSCEF: 03/27/2017

130.    Over the years, a number of companies, including but not limited to, Arkema, Asahi, BASF, Clariant, Daikin, DuPont, and Solvay Selexis have manufactured PFOA within the United States.

131.    PFOA is a fluorine-containing chemical that is primarily used in the production of fluoropolymers such as poly-tetra-fluoro-ethylene ("PTFE").

132.    PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney and liver.

133.    In 2006, eight major PFOA manufacturers agreed to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95%, no later than 2010.

134.    In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)[1]," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA's, called for greater regulation, restrictions, limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.

135.    As of May 2016, the EPA issued Lifetime Health Advisories and Health Effects Support Documents for PFOA and PFOS[2]. The EPA identifies the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a

---

[1] Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107–A111; http://dx.doi.org/10.1289/ehp.1509934

[2] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101 (May 25, 2016).

20

lifetime of exposure at 70 parts per trillion (ppt). While health advisories are non-regulatory, they reflect the EPA's assessment of the best available peer-reviewed science.

136.    PFOA gets into the environment from industrial facilities that make PFOA or use PFOA to make other products. It also enters the environment when released from PFOA-containing consumer and commercial products during their use and disposal.

137.    PFOA can remain in the environment, particularly in water, for many years and can move through soil and into groundwater, or be carried in air.

138.    Human studies show associations between increased PFOA levels in blood and an increased risk of several health effects, including high cholesterol levels, high blood pressure, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

139.    These injuries can arise months or years after exposure to PFOA.

140.    PFOA's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

**AFFF Background**

141.    Aqueous film forming foam (AFFF) is Class-B firefighting foam. It is water based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

142.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire fighting foam in the U.S. and many parts of the world. AFFF provided superior performance over normal Protein foam, which had been in wide spread use since World War II.

143.    AFFF's are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the

characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

144.    The Air Force began using PFC-based AFFF in 1970 to extinguish fuel-based fires.

145.    Beginning in 2009, the USAF followed the EPA issued short-term provisional health advisory of 400 ppt for PFA and 200 ppt of PFOS. The USAF now applies the current EPA lifetime exposure health advisory of 70 ppt for both PFOA and PFOS.[3]

146.    Fluorosurfactants used in 3M's AFFF were produced by a unique process known as electrochemical fluorination (ECF). The ECF process results in a product that contains and/or breaks down into compounds containing PFOA and/or PFOS.

147.    In the foam industry, concentrates are typically referred to as "3%" or "6%" concentrate, depending on the mixture rate with water. AFFF concentrates contain about 60-90% water and have a fluorine content of about 0.3-1.8%.

**AFFF Usage in the Westhampton, Westhampton Beach, and Quiogue Area**

148.    Upon information and belief, 3M, Tyco and National Foam each manufactured AFFF containing PFCs, among other reasons, for sale.

149.    Defendants sold AFFF that was used at Gabreski Air National Guard Base and Francis S. Gabreski Airport.

150.    It is estimated that 75% of the military AFFF inventory is an ECF-based product. This is not surprising since for most of the past 30 years 3M was the primary supplier of AFFF.

---

[3] *Air Force applies new EPA guidance*, Air Force Civil Engineer Center Public Affairs, May 19, 2016.

22

151.    At any given time during its operation, Gabreski Air National Guard Base and Francis S. Gabreski Airport housed and used thousands of gallons of AFFF concentrate manufactured by Defendants.

152.    The AFFF was expected to reach Gabreski without substantial change in the condition in which it was sold to the NYANG, and it did.

153.    Air Force, NYANG, and civilian agencies conducted training exercises at Gabreski including firefighting and explosion training that used of AFFF manufactured by Defendants for decades.

154.    Throughout the time AFFF containing PFOA and PFOS was used at Gabreski, Defendant Suffolk County was the owner and operator of the Airport where the exercises were taking place.

155.    Upon information and belief, the instructions, warning labels, and material safety data sheets that were provided with the AFFF by the Defendants, which, at least at significant times, did not fully describe the health and environmental hazards of AFFF which Defendants knew or should have known existed.

156.    Upon information and belief, Defendants had known of these health and environmental hazards for years. For example, by the mid-1980s, 3M began a major program to review personnel handling of fluorochemicals and determined that fluorochemicals could bioaccumulate.

157.    In 1993, a published peer-reviewed study of 3M workers exposed to C-8 (PFOA) at a 3M manufacturing facility in Minnesota reported that "ten years of employment in exposed jobs was associated with a 3.3 fold increase … in prostate cancer mortality compared to no employment in [C-8] production. … If prostate cancer mortality is related to [C-8, C-8] may

increase prostate cancer mortality by altering reproductive hormones in male workers," thus making clear to Defendants by at least 1993 that C-8 was linked to increased cancer rates in C-8-exposed humans.

158.    3M, who was the predominant manufacturer of AFFF, ceased production of PFOS-based AFFF in 2002. Under pressure from the EPA, on May 16, 2000, 3M announced it would phase out production of two synthetic chemicals, PFOS and PFOA, that it had developed more than fifty years earlier.[4]

159.    An EPA internal memo on the day of 3M's phase out announcement stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term…[PFOS] appears to combine Persistence, Bioaccumulation, and Toxicity properties to an extraordinary degree."[5]

160.    In contrast, 3M's news release insisted that "our products are safe" while extolling their "principles of responsible environmental management" as driving the cessation of production.[6]

**PFOA and PFOS Contamination in Westhampton, Westhampton Beach, and Quiogue Area**

161.    Suffolk County Water Authority ("SCWA") conducted sampling of public supply wells in 2014, 2015 and private supplies in 2016 proximate to the site, in the Westhampton,

---

[4] 3M press release, "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1

[5] EPA internal memo, "Phaseout of PFOS", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf#page=2

[6] 3M press release, "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 26 of 55 PageID #: 35

Westhampton Beach, and Quiogue areas downgradient of two Fire Training Areas and the base aircraft hangars.

162.     The sample program showed that groundwater downgradient of the base has been impacted by PFOS and PFOA, likely associated with aqueous film forming foam (AFFF) which has been used at the base for fire-fighting, fire training, and fire suppression systems.

163.     A groundwater monitoring well installed and sampled by Suffolk County Department of Health Services between the Airport property and the Meetinghouse Road Wellfield in July 2016 was found to contain PFOS at 14,300 parts per trillion (ppt).

164.     In July 2016, Plaintiffs and the Plaintiff class were advised that their household water was contaminated with PFCs at hazardous levels and advised to seek alternate drinking water supplies.

165.     Groundwater wells tested within the Class Area have shown elevated concentrations of PFCs.

**Fear of Cancer**

166.     Each and every Plaintiff and Class member has a justifiable and actual fear of developing cancer as a result of said exposure and bioaccumulation of PFOA in their bodies. With reasonable probability, the prospective, feared, and anticipated consequences may be expected to flow from the past harm.

167.     The degree of probability that Plaintiffs and Class members will develop cancers is such that there is a reasonable certainty that such cancers will develop at some future date, thus entitling Plaintiffs to recover from Defendants for apprehended consequences that are not presently manifested.

25

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 27 of 55 PageID #: 36

168.    A rational basis exists between Plaintiffs' and Class members exposure to the above-described toxins and contaminants, and the currently manifested fear of developing cancer in the future.

169.    To the extent that Defendants' actions resulted in the discharge and/or release of toxic contaminants into the soil and groundwater, thereby entering and injuring Plaintiffs' physical and mental well-being, their real and personal property, and their economic interests, Defendants are jointly and severally liable for all damages from contamination in this case, their physical and mental well-being, their real and personal property, and their economic interests.

## CLASS ACTION ALLEGATIONS

170.    Plaintiffs incorporate the forgoing paragraphs as though the same were set forth at length herein.

171.    Plaintiffs and the Class bring this action and seek to certify and maintain it as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules, Section 901, on behalf of themselves and similarly situated current and former residents in Westhampton, Westhampton Beach, and Quiogue, New York, subject to amendment and additional discovery as follows:

a.    All individuals who, as of 2014 to date, are or were owners of real property located in Westhampton, Westhampton Beach, and Quiogue, New York area and who a result of the stigma of the PFOA contamination have suffered a diminution in value of their property (the "Diminution in Value of Property Class").

b.    All residents of the Westhampton, Westhampton Beach, and Quiogue , New York area since 1970 who have ingested PFOA-contaminated water in or around Westhampton, Westhampton Beach, and Quiogue and who have suffered accumulation of PFOA in their bodies

demonstrated by (i) blood serum tests disclosing a PFOA level in their blood above the recognized background levels, or (ii) documentation of an increased opportunity for exposure, as defined in ATSDR's Final Criteria for Determining the Appropriateness of a Medical Monitoring Program Under CERCLA[7] (the "Medical Monitoring Class").

172.    Proposed Class representatives are members of the proposed Diminution in Value of Property Class and Medical Monitoring Class they seek to represent. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

173.    Excluded from the Classes are:

a.    Defendants, including any entity or division in which Defendants have a controlling interest, along with their legal representative, employees, officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

b.    Any plaintiffs who have filed a lawsuit for the recovery of personal injury damages and compensatory damages for water and/or property damages;

c.    the Judge to whom this case is assigned, the Judge's staff, and the Judge's immediate family;

d.    any class counsel or their immediate family members; and

e.    all governmental entities.

174.    Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

---

[7] *See* ATSDR's Final Criteria for Determining the Appropriateness of a Medical Monitoring Program Under CERCLA, https://www.gpo.gov/fdsys/pkg/FR-1995-07-28/pdf/95-18578.pdf.

27

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 29 of 55 PageID #: 38

**Numerosity and Ascertainability**

175. This action meets the numerosity requirement given that the number of impacted current and former residents in the Westhampton, Westhampton Beach, and Quiogue Area and property owners, upon information and belief, has reached the thousands, making individual joinder of class members' respective claims impracticable. While the exact number of class members is not yet known, a precise number can be ascertained from U.S. Federal Census records, the State of New York, and the public records of the municipal entities in the Westhampton, Westhampton Beach, and Quiogue Area, and through other appropriate discovery.

176. The resolution of the claims of the class members in a single action will provide substantial benefits to all parties and the Court. It is expected that the class members will number in the thousands.

177. Finally, Class members can be notified of the pendency of this action by Court-approved notice methods.

**Typicality**

178. Plaintiff class representatives' claims are typical of the claims of class members, and arise from the same course of conduct by Defendants. Plaintiffs' persons and real property, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred damages and losses related to the introduction of PFOA, PFOS, and other toxic substances into the water supplies in the Westhampton, Westhampton Beach, and Quiogue area.

179. Furthermore, the factual bases of Defendants' actions and misconduct are common to all Class Members and represent a common thread of misconduct resulting in common injury to all Class Members. The relief Class representatives seek is typical of the relief sought for absent Class Members.

**Adequacy of Representation**

180.    Proposed class representatives will serve as fair and adequate class representatives as their interests, as well as the interests of their counsel, do not conflict with the interest of other members of the class they seek to represent. Further, class representatives have retained counsel competent and well experienced in class action litigation and environmental tort litigation.

181.    Class representatives and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither the class representatives nor their counsel have interests adverse to the Class.

**Predominance of Common Issues**

182.    There are numerous questions of law and fact common to class representatives and Class Members that predominate over any question affecting only individual Class Members, making it appropriate to bring this action. The answers to these common questions will advance resolution of the litigation as to all Class Members. These common legal and factual issues include the following:

a)    Whether Defendants engaged in the conduct alleged herein;

b)    Whether Defendants knew or should have known that exposure to PFOA and PFOS could increase health risks;

c)    Whether Defendants knew or should have known that their manufacture of AFFF containing PFOA and PFOS was unreasonably dangerous;

d)    Whether Defendants knew or should have known that their AFFF contained persistent, stable and mobile chemicals that were likely to contaminate groundwater water supplies;

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 31 of 55 PageID #:
40

e)      Whether Defendants failed to sufficiently warn of the potential for harm that resulted from use of their products;

f)      Whether Defendants became aware of health and environmental harm caused by PFOA and PFOS in their AFFF products and failed to warn the Class of same;

g)      The extent to which Defendants knew about the PFOA and PFOS contamination in the aquifer in the Westhampton, Westhampton Beach, and Quiogue area;

h)      Whether the Defendants owed a duty to the Class to refrain from the actions that caused the contamination of the drinking water with PFOA and PFOS;

i)      Whether Defendants made unlawful and misleading representations or material omissions with respect to the health impacts of PFOA and PFOS;

j)      For the Medical Monitoring Class, whether the risk of any health issue or bodily injury of the Class are attributable to exposure of PFOA and PFOS in the water supply;

k)      For the Diminution in Property Value Class, whether the PFOA and contamination caused and continues to cause:

(1) a continuous invasion of the property rights of the Class such that the property values in the Westhampton, Westhampton Beach, and Quiogue Area have and/or continue to decline in value following the disclosure of the PFOA contamination,

(2) have substantially interfered with the Class' use and enjoyment of their property, a continuous invasion of the property rights of the Subclass; and

l)      Whether Class Members are entitled to damages and other monetary relief and other equitable relief, including but not limited to punitive damages, and if so, in what amount.

m)      Whether the members of the Classes have sustained damages and the proper measure of damages.

30

n)    Whether Defendants are strictly liable to the Class for their actions.

**Superiority**

183.    The class action mechanism is superior to any other available means of the fair and efficient adjudication of this case. Further, no unusual difficulties are likely to be encountered in the management of this class action. Given the great number of current and former residents of Westhampton, Westhampton Beach, and Quiogue Area impacted by Defendants' conduct, it is impracticable for Plaintiffs and the Class to individually litigate their respective claims for Defendants' complained of conduct as to do so would risk inconsistent or contradictory judgments and increase delays and expense to both parties and the court system. Therefore, the class action mechanism presents considerably less management challenges and provides the efficiency of a single adjudication and comprehensive oversight by a single court.

## <u>CAUSES OF ACTION FOR CLASS ACTION AND INDIVIDUAL CLAIMS</u>

### AS AND FOR A FIRST CAUSE OF ACTION:
#### <u>Negligence</u>

184.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

185.    This cause of action is brought pursuant to New York law.

186.    Negligence may exist both as an omission as well as an affirmative act. A cause sounding in negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.

187.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

31

188.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

189.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Westhampton, Westhampton Beach, and Quiogue Area as a result of its proximity to Gabreski Air National Guard Base and Francis S. Gabreski Airport.

190.    Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards associated with AFFF entering and poisoning the environment and groundwater.

191.    Defendants knew or should have known that safety precautions would be required to prevent the release of PFOA and PFOS into the surrounding environment.

192.    Defendants, as manufacturers, marketers, and sellers of AFFF owed Plaintiffs and the Classes a cognizable duty to exercise reasonable care to ensure that AFFF was manufactured, marketed, sold and used in such a way as to ensure that the end users of AFFF were are of the potential harm PFOA and PFOS can cause to human health and the environment.

193.    Defendants owed a duty to Plaintiffs and the Classes to ensure that AFFF was used in a manner so as to prevent the exposure from creating an imminent and substantial health threat.

194.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs and the Classes a duty to warn and notify Plaintiffs and the class members of the release of the contamination before it injured Plaintiffs and the Class members and their property and/or to act reasonably to negate and/or minimize the damage to Plaintiffs and their property.

195.    Defendants breached their duty by allowing PFOS and PFOA to be released into the drinking water (both the municipal and private wells) of the Westhampton, Westhampton Beach, and Quiogue Area through their manufacturing of the AFFF and failure to warn and notify the end users of AFFF about the danger that PFOS and PFOA would enter into the environment and groundwater.

196.    As such, the Defendants, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally breached their legal duties to the Plaintiffs and the classes, causing the contamination of drinking water in and around the residences of Plaintiffs and the Classes.

197.    Defendants further breached the duties owed to the Plaintiffs and the Classes by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

198.    Defendants' failure to notify the Plaintiffs and the Classes in a timely manner of the contamination of the Westhampton, Westhampton Beach, and Quiogue Area's drinking water, and, consequently, the presence of PFOA and PFOS in the real properties of Plaintiffs constitutes another breach of the duties that Defendants owed the Plaintiffs and the Classes.

199.    Defendants' breaches of their duties were direct and proximate causes of Plaintiffs' and the Classes' damages and the imminent, substantial, and impending harm to their homes and health.

200.    Defendants' breaches of their duties caused the drinking water in both the municipal and private wells to become contaminated with unsafe and dangerous levels of PFOA and PFOS.

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 35 of 55 PageID #: 44

201.     Further, Defendants' breach of their duty to timely notify the community and act reasonably in warning of the presence of PFOA and PFOS in AFFF, Plaintiffs and the Classes were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs and the Class have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

202.     Plaintiffs and the Classes suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs and the Classes, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs and the Classes so apparent as to entitle them to be protected against such actions or inactions.

203.     Accordingly, Plaintiffs and the Classes seek damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Classes to their original position, including but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendants conduct in an amount to be proved at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
### Private Nuisance (Private Well Owners Only)

204.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

205.     This cause of action is brought pursuant to the laws of New York.

34

206.   Plaintiffs and the Property Damage Classes, as described above, are owners of real property with the right of possession.

207.   Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated both the municipal drinking water system and drinking water of private wells in Westhampton, Westhampton Beach, and Quiogue and the surrounding area.

208.   At all times relevant to the present cause of action, the Manufacturing Defendants manufactured, marketed, and sold the AFFF that was used at Francis S. Gabreski Airport that resulted in the contamination of the water supply relied upon by Plaintiffs and Property Damage Classes at all relevant times.

209.   At all times relevant to the present cause of action, Defendant Suffolk County was the owner and operator of Francis S. Gabreski Airport where AFFF containing PFOA and PFOS was used for decades in the Westhampton, Westhampton Beach, and Quiogue area.

210.   At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that large quantities of PFOA and PFOS would and/or could be introduced into the properties of Plaintiffs and the Property Damage Classes.

211.   The above-described affirmative, voluntary, and intentional acts were performed with the reckless disregard of the potential for PFOA and PFOS to be disbursed through the water and onto the land and property of Plaintiffs and the Property Damage Classes.

212.   Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOA, PFOS and possibly other toxic substances to be released into the drinking water for Westhampton, Westhampton Beach, and Quiogue Area.

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 37 of 55 PageID #: 46

213.    The introduction of unknown quantities of PFOA and PFOS onto the property of the Plaintiffs and Property Damage Classes unreasonably interfered with the use and enjoyment of their property.

214.    The contamination of class members' drinking water has interfered with the rights of Plaintiffs and the classes to use and enjoy their property.

215.    Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and the classes to, *inter alia*, refrain from using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense. Defendants' conduct has also substantially interfered with class members' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that each class member so chooses.

216.    Defendants' negligent, reckless and/or intentional acts and omissions were unreasonable and constitute a continuous invasion of the property rights of Plaintiffs and the classes.

217.    The potential danger from the drinking water at their residences has caused the Plaintiffs and the Class significant inconvenience and expense.

218.    This constitutes a substantial interference with the use of the properties such that it is offensive and has caused significant inconvenience or annoyance.

219.    By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
### Failure to Warn
(as against County of Suffolk)

36

Case 2:17-cv-02566-JS-AYS Document 1-1 Filed 04/28/17 Page 38 of 55 PageID #:
47

220.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

221.    This cause of action is brought pursuant to New York law.

222.    Defendant County of Suffolk failed to employ reasonable care that a reasonably prudent person would have under the circumstances by allowing PFOS and PFOA to be transported, used, utilized, stored, dumped, handled and/or disposed while owning and operating Francis S. Gabreski Airport, in a manner that led to their release into the soil and local groundwater.

223.    Defendant County of Suffolk knew or should have known that the manner in which PFOA and PFOS was transported, used, utilized, stored, dumped, handled and/or disposed of at Gabreski Air National Guard Base and Francis S. Gabreski Airport would result in the contamination of the water supply in the Westhampton, Westhampton Beach, and Quiogue Area as a result of its proximity to Gabreski Air National Guard Base and Francis S. Gabreski Airport.

224.    Further, this contamination then led to the exposure of residents of the Westhampton, Westhampton Beach, and Quiogue area to the toxins and increased their risk of numerous diseases as more fully set forth above.

225.    Defendant County of Suffolk has negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally caused the immediate and continuing contamination of soil and groundwater in and around the Westhampton, Westhampton Beach, and Quiogue Area that threatens to further contaminate Plaintiffs and the Classes.

226.    Defendant County of Suffolk had a duty to warn Plaintiffs that the aforementioned releases of toxic substances including but not limited to PFOA and PFOS had

37

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 39 of 55 PageID #:
48

occurred and that migration of the Contaminants could foreseeably contaminate the sole-source

local aquifer from which Plaintiffs and the Classes rely upon for water.

227.    Defendant County of Suffolk breached their duty by failing to warn Plaintiffs and

the Classes that they had failed to prevent the migration of PFOA and PFOS from Francis S.

Gabreski Airport, which led and is leading to further migration of PFOA and PFOS toward the

Westhampton, Westhampton Beach, and Quiogue Area.

228.    As a result of Defendant County of Suffolk's breach of their duty to warn the

Plaintiffs and the Classes, Plaintiffs were forestalled from undertaking effective and immediate

remedial measures, and Plaintiffs and the Classes will be forced to expend millions of dollars and

significant resources to test, monitor and remediate the effects of Defendants' negligence for

many years into the future.

229.    Defendant County of Suffolk's breach of its duty to warn was the actual and

proximate cause of Plaintiffs' injuries and the actual, imminent, and substantial damage to

Plaintiffs and the Classes.

230.    Plaintiffs' injuries are the natural and probable consequence of Defendants'

breach of their duty.

231.    Defendants' failure to warn was a direct and proximate cause of the

environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that

came from the use and storage of AFFF at Gabreski Air National Guard Base and Francis S.

Gabreski Airport.

232.    As a result of Defendant County of Suffolk's conduct and the resulting

contamination, the value and marketability of the property of the Plaintiffs' and Property

Damage Classes has been and will continue to be diminished.

Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 40 of 55 PageID #:
49

233.    Alternatively, as a direct and proximate result of Defendant County of Suffolk's acts and omissions, Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and/or mitigation systems for those properties, and the cost of alterative water.

234.    As a result of the contamination, Plaintiffs and the Plaintiff Class have lost the use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendant County of Suffolk.

235.    As a result of Defendant County of Suffolk's conduct and the resulting contamination, the Plaintiffs and the Medical Monitoring Class have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has increased their risk to develop illnesses associated with this exposure as more fully described and/or significantly increased their fear of developing those illnesses.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Products Liability, Failure to Warn
(as against the Manufacturing Defendants)

236.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

237.    This cause of action is brought pursuant to New York law.

238.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

239.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

39

240.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Westhampton, Westhampton Beach, and Quiogue Area as a result of its proximity to Gabreski Air National Guard Base and Francis S. Gabreski Airport.

241.    Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards associated with AFFF entering and poisoning the environment and groundwater.

242.    Defendants failed to provide sufficient warning to the end users and the public of AFFF, including Gabreski Air National Guard Base and Francis S. Gabreski Airport, that the use and storage of Defendants' product would cause the product to be released into the environment and cause the contamination of the environment, groundwater, and drinking water, with PFOA, PFOS, and potentially other toxic substances.

243.    Further, this contamination then led to the exposure of residents of the Westhampton, Westhampton Beach, and Quiogue area to the toxins and increased their risk of numerous diseases as more fully set forth above.

244.    Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to both the residents of the Westhampton, Westhampton Beach, and Quiogue Area and their property.

245.    Had Defendants provided adequate warnings, the residents of the Westhampton, Westhampton Beach, and Quiogue Area could have taken measures to avoid or lessen their exposure.

246.    Had Defendants provided adequate warnings, the users of AFFF at Gabreski Air National Guard Base and Francis S. Gabreski Airport could have taken steps to reduce or prevent

40

INDEX NO. 605497/2017
Case 2:17-cv-02566-JS-AYS   Document 1-1   Filed 04/28/17   Page 42 of 55 PageID #: 51
RECEIVED NYSCEF: 03/27/2017

the release of PFOA, PFOS, and potentially other toxic substances into the environment, groundwater, and drinking water.

247.    Defendants' failure to warn was a direct and proximate cause of the environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that came from the use and storage of AFFF at Gabreski Air National Guard Base and Francis S. Gabreski Airport.

248.    As such, Defendant's failure to provide adequate and sufficient warnings for the AFFF that they manufactured, marketed, and sold renders the AFFF a defective product.

249.    As a result of Defendants' conduct and the resulting contamination, the value and marketability of the property of the Plaintiffs' and Property Damage Classes has been and will continue to be diminished.

250.    Alternatively, as a direct and proximate result of Defendants' conduct, Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water.

251.    As a result of the contamination Plaintiffs and the Classes have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

252.    As a result of Defendants' conduct and the resulting contamination, the Plaintiffs and the Medical Monitoring Class have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has increased their risk to develop illnesses associated with this exposure as more fully described and/or significantly increased their fear of developing those illnesses.

41

Case 2:17-cv-02566-JS-AYS Document 1-1 Filed 04/28/17 Page 43 of 55 PageID #: 52

253.     Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs and members of the Plaintiff Classes.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**<u>Strict Product Liability</u>**
(as against the Manufacturing Defendants)

254.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

255.     This cause of action is brought pursuant to New York law.

256.     Defendants knew or should have reasonably known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

257.     Defendants knew or should have reasonably known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

258.     Defendants knew or should have reasonably known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Westhampton, Westhampton Beach, and Quiogue Area as a result of its proximity to Gabreski Air National Guard Base and Francis S. Gabreski Airport.

259.     Knowing of the dangerous and hazardous properties of the AFFF, Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFC's.

260.     These alternative designs and/or formulations were already available, practical, similar in cost and technologically feasible.

261.     The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to persons and property that was caused by the Defendants' manufacture, marketing, and sale of AFFF that contained PFC's.

42

Case 2:17-cv-02566-JS-AYS Document 1-1 Filed 04/28/17 Page 44 of 55 PageID #: 53

262.    Additionally, the AFFF that was manufactured, marketed, and sold by the Defendants contained PFC's that were so toxic and unreasonably dangerous to human health and the environment, the toxic chemicals were so mobile and persistent, that the act of designing, formulating, manufacturing, marketing, and selling this product was unreasonably dangerous under the circumstances.

263.    Further, this contamination then led to the exposure of residents of the Westhampton, Westhampton Beach, and Quiogue area to the toxins and increased their risk of numerous diseases as more fully set forth above.

264.    The AFFF manufactured, marketed, and sold by the Defendants was dangerous and defective because the foreseeable risk of harm could have been reduced or eliminated by the adoption of a reasonable, alternative design that was not unreasonably dangerous.

265.    Defendants' defective design and formulation of AFFF was a direct and proximate cause of the environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that came from the use and storage of AFFF at Gabreski Air National Guard Base and Francis S. Gabreski Airport.

266.    As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the value and marketability of the property of the Plaintiffs' and Property Damage Classes has been and will continue to be diminished. Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water.

267.    As a result of the contamination Plaintiffs and the Plaintiff Class have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

268.     As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the Plaintiffs and the Medical Monitoring Classes have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has increased their risk to develop illnesses associated with this exposure as more fully described and/or significantly increased their fear of developing those illnesses.

269.     As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to the Plaintiffs and the Plaintiff Classes.

270.     Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs and members of the Classes.

## AS AND FOR AN SIXTH CAUSE OF ACTION
### Trespass
(as against County of Suffolk)

271.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

272.     This cause of action is brought pursuant to New York law.

273.     Defendant County of Suffolk's intentional acts and/or omissions caused toxic substances, including but not limited to PFOA and PFOS, to be spilled or disposed of and released into the ground at Gabreski Air National Guard Base and Francis S. Gabreski Airport and to enter the groundwater and aquifer beneath.

274.     Upon information and belief, Defendant County of Suffolk had exclusive control over Francis S. Gabreski Airport at all relevant times.

275.     PFOA and PFOS have migrated and, upon information and belief, continue to further migrate from Gabreski Air National Guard Base and Francis S. Gabreski Airport to and invade Plaintiffs' properties and the groundwater from which Plaintiffs and the Classes receive their water.

Case 2:17-cv-02566-JS-AYS Document 1-1 Filed 04/28/17 Page 46 of 55 PageID #: 55

276.     Defendant County of Suffolk's intentional acts and omissions caused toxic substances to enter and trespass upon the land and subsurface waters of Plaintiffs without consent and interfere with Plaintiffs' exclusive possession and/or right of possession, resulting in an non-permissive entry onto Plaintiffs' land and subsurface waters.

277.     Upon information and belief, Defendants affirmatively, voluntarily and intentionally failed to act in a manner that would prevent the migration of the Contaminants onto Plaintiffs' properties.

278.     At the time of the above-described affirmative, voluntary and intentional acts and omissions, Defendants knew or should have reasonably known that PFOA and PFOS would pass through the soil, groundwater and aquifer and contaminate Plaintiffs' and Class Members' properties.

279.     The intentional actions by Defendant County of Suffolk resulted in the immediate and continued trespass, injury and damage to Plaintiffs and the Classes, their water supply and/or properties from the introduction of PFOA and PFOS into the properties, pipes, and appliances of Plaintiffs and the Classes.

280.     Defendant County of Suffolk knew or should have known that failing to properly remediate the contamination would result in a further trespass upon Plaintiffs' properties and exacerbate the harm to Plaintiffs.

281.     As a direct result of the foregoing trespass by Defendant County of Suffolk, Plaintiffs and the Classes have suffered injuries including, but not limited to: property damage, the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass,

45

investigative costs, additional testing costs, treatment costs, loss of use of water, purchase of bottled water, and purchase of filtration systems.

## DAMAGES SOUGHT BY THE CLASS AND INDIVIDUALS

282.    Plaintiffs re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

283.    The Plaintiffs and the Classes have been caused to be exposed to elevated and hazardous levels of toxic and hazardous substances, including but not limited to PFOA and PFOS.

284.    The Class and plaintiffs have sustained and will continue to sustain damages to their property as a result of Defendants' actions. As a result, the Class and plaintiffs seek monetary damages for each violation of the First through Sixth Claims for Relief. In particular, the Class seeks (i) monetary damages reflecting the diminution in value of Plaintiffs' and the Class' property caused by Defendants' conduct; (ii) monetary damages to compensate Plaintiffs and the Class for the loss of the use and enjoyment of their properties caused by Defendant's conduct; (iii) monetary damages to compensate Plaintiffs and the Class for the loss of quality of life caused by Defendants' conduct.

### Medical Monitoring[8]

285.    The Plaintiffs and Medical Monitoring Class also seek consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the exposure risks of the contaminants emanating from Gabreski Air National Guard Base and Francis S. Gabreski Airport, including but not limited to PFOA and PFOS.

---

[8] Medical Monitoring is not being sought as in independent cause of action but, rather, as consequential damages in connection with the personal injury and property claims sought herein as is appropriate. *See Ivory v. Int'l Bus. Machines Corp.,* 983 N.Y.S.2d 110 (2014), *leave to appeal denied*, 11 N.E.3d 204 (2014).

46

286. Defendant Suffolk County's continued negligent acts and omissions in operating and maintaining the Site, along with the Manufacturing Defendants acts and omissions, are the proximate cause of higher than normal, in fact excessive exposure, to PFOA and PFOS.

287. Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

288. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

289. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the water supply in the Westhampton, Westhampton Beach, and Quiogue Area as a result of its proximity to Gabreski Air National Guard Base and Francis S. Gabreski Airport.

290. The Plaintiffs and Medical Monitoring Class have been exposed to PFOA, PFOS, and potentially other toxic substances that resulted from the use and storage of the Manufacturing Defendants' AFFF at Gabreski Air National Guard Base and Francis S. Gabreski Airport, and from Defendant Suffolk County's ownership of Francis S. Gabreski Airport.

291. The Class and Plaintiffs have suffered from the accumulation of PFOA and PFOS in their bodies as a result of Defendants' acts and omissions described of herein.

292. The resulting exposure significantly increased the fear and risk of the Class from contracting serious latent diseases, including but not limited to kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), hypercholesterolemia, and autoimmune diseases such as sarcoidosis.

293. The significantly increased risks associated with exposure to PFOA, make periodic diagnostic medical examinations reasonable and necessary.

294. The Class and Plaintiffs have experienced a fear of contracting serious latent diseases, including but not limited to kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), hypercholesterolemia, and autoimmune diseases such as sarcoidosis.

295. Each and every one of these Plaintiffs and Class members will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

296. In order to compensate Plaintiffs and Class members for damages suffered due to Defendants' acts, each and every Plaintiff and Class member requires, among other things, that Defendants collectively pay the past and future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the injuries suffered due to the contamination emanated from the plume, with Plaintiffs and the Class member retaining freedom of choice relative to choosing their experts. Many of these costs would not be covered by health care insurers, and if covered, may unfairly result in increased premiums.

297. Each and every one of these Plaintiffs' and Class members' increased susceptibility to certain injuries and the irreparable threat to their future health and well-being resulting from their exposure to hazardous substances and chemicals in and around their homes and businesses in the Westhampton, Westhampton Beach, and Quiogue area can only be mitigated and/or addressed by the creation of a medical program (the "Westhampton, Westhampton Beach, and Quiogue Program") including but not limited to:

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 50 of 55 PageID #:
59

a.  Establishing a program that provides education and outreach on the existence and availability of the services established under the medical monitoring program, including but not limited to the establishment of a public Website with information about the Westhampton, Westhampton Beach, and Quiogue Program, meetings with potentially eligible populations, development and dissemination of outreach materials informing current and former Westhampton, Westhampton Beach, and Quiogue residents about the program, and the establishment of phone information services;

b.  Funding further studies of the long-term effects of exposure;

c.  Funding medical surveillance for those individuals exposed to the contaminants described of herein, including PFOA and PFOS.

d.  Funding research into possible cures for the detrimental effects of breathing, living and working near the contaminants and toxicants present in the Westhampton, Westhampton Beach, and Quiogue area as a result of the acts and omissions alleged here;

e.  Gathering and forwarding to each and every one of these Plaintiffs' treating physicians' information related to the diagnosis and treatment of injuries which result from their exposure(s) in and around Westhampton, Westhampton Beach, and Quiogue;

f.  Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of each and every one of these Plaintiffs and Class members.

321.    Prescribed monitoring procedures exist that makes the early detection of these diseases possible.

322.    The monitoring procedures or regimes are different from normally recommended procedures that would be used in the absence of the exposure.

49

323.   The prescribed medical surveillance is reasonably necessary according to contemporary scientific principals for persons such as Plaintiffs and the Class who have been exposed and continue to be exposed to excessive levels of the referenced hazardous chemicals and materials.

324.   Plaintiffs and the Class will suffer irreparable harm if the requested medical monitoring program is not implemented because they are in danger of suffering catastrophic latent diseases as a result of their prolonged exposure to toxic and hazardous substance caused by Defendants' negligence.

325.   Detection of these diseases and early treatment is medically reasonable and necessary to prevent progression and further injuries.

326.   It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to such substances in order to effectively treat Plaintiffs and the Class.

327.   Establishment of a medical monitoring program for the Plaintiffs and the Class is essential as a consequential damage from their exposure to the contaminants because without the requested medical monitoring programs, they will be subjected to further injuries and delayed treatment.

328.   Plaintiffs and the Class request that the Court appoint a plan administrator, require the Defendants to fund the medical monitoring plan, and reserve jurisdiction to enforce the terms and conditions of the plan.

329.   Accordingly, Plaintiffs and the Class are entitled to a medical monitoring program which provides for medical testing, surveillance, monitoring, and study of the Class members for conditions caused by exposure to the references substances, as well as payment of their attorney's fees and expenses, and any other relief this court deems just and proper.

330.     A thorough medical monitoring plan can and should be developed for the Plaintiffs and the Medical Monitoring Classes that will assist in the early detection and beneficial treatment of the numerous diseases that can develop as a result of exposure to PFOA and PFOS.

331.     Plaintiffs and the Diminution of Property Value Class have sustained and will continue to sustain damages to their property as a result of Defendants' actions. As a result, Plaintiffs and the Subclasses seek monetary damages for each violation of the First through Sixth Claims for Relief. In particular, Plaintiffs and the Subclasses seek (i) monetary damages to compensate class members for the diminution in value of their property caused by Defendants' conduct; (ii) monetary damages to compensate class members for the loss of the use and enjoyment of their properties caused by Defendant's conduct; (iii) monetary damages reflecting the cost to remediate class members' property of the contamination caused by Defendants' conduct;, and (iv) monetary damages to compensate class members for the loss of quality of life caused by Defendants' conduct.

## **PUNITIVE DAMAGES**

332.     Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

333.     Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing property damage, nuisances, and injuries upon the persons and properties of Plaintiffs and the Class, disregarding their protected rights.

334.     Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFOA-containing waste would be effectively disposed of and not discharged into the surrounding environment.

335.     Defendants have caused great harm to the property and water supplies of Plaintiffs and the Class and demonstrated an outrageous conscious disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and the Classes demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

A.     an award certifying the proposed Medical Monitoring and Property Damage Classes, designating Plaintiffs' proposed representatives as the named representatives and designating the undersigned as Class Counsel;

B.     a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs and members of the Class.

C.     an order requiring that Defendants implement a testing and monitoring protocol to test each property and its drinking water for the properties belonging to the members of the Property Damage Classes and, where appropriate, to implement appropriate remedial measures.

D.     an order establishing a medical monitoring protocol for Plaintiffs and the Medical Monitoring Class.

E.     an award to Plaintiffs and the Class of general, compensatory, exemplary, consequential, nominal, and punitive damages;

F.     an order for an award of attorney fees and costs, as provided by law;

G.     an award of pre-judgment and post-judgment interest as provided by law, and

H.     an order for all such other relief the Court deems just and proper.

52

## JURY DEMAND

Plaintiffs and the Classes demand a trial by jury of all claims asserted in this Complaint.


Dated: Melville, New York
   March 27, 2017

                          Respectfully submitted,


**NAPOLI SHKOLNIK PLLC**                **CAMPOLO, MIDDLETON &**
                                        **MCCORMICK, LLP**


By: /s/ Hunter Shkolnik                 By: /s/ Scott Middleton
Hunter J. Shkolnik, Esq.                Scott Middleton, Esq.
Paul J. Napoli, Esq.                    Frederick Eisenbud, Esq.
Patrick J. Lanciotti, Esq.              4175 Veterans Memorial Highway
Tate J. Kunkle, Esq.                    Suite 400
360 Lexington Avenue, 11th              Ronkonkoma, New York 11779
New York, New York 10017                (631) 738-9100
(212) 397-1000                          SMiddleton@cmmllp.com
hunter@napolilaw.com                    FEisenbud@cmmllp.com
pnapoli@napolilaw.com
planciotti@napolilaw.com
tkunkle@napolilaw.com                   *Attorneys for Plaintiff and the putative classes*

Case 2:17-cv-02566-JS-AYS    Document 1-1    Filed 04/28/17    Page 55 of 55 PageID #: 64

SUPREME COURT OF THE STATE OF NEW YORK
SUFFOLK COUNTY

ISAAC GREEN and ARNEAL GREEN; ELIZABETH
LIGGON and JEROME LIGGON; CATHY GREEN and AL
GREEN; JASON ROBINSON; YVONNE GREEN and
AARON GREEN; MARK GREEN; STACY GREEN and
ANTHONY GREEN; THEODORA LIGGON and
GREGORY LIGGON; and MICHELLE BLOXON,

        *Plaintiffs,*

-against -

THE 3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co), TYCO FIRE PRODUCTS L.P.,
successor-in-interest to THE ANSUL COMPANY;
ANGUS FIRE; NATIONAL FOAM; BUCKEYE FIRE
PROTECTION CO.; CHEMGAURD; and COUNTY OF
SUFFOLK,

        *Defendants.*

Index No. _____/2017

=============================================================

## SUMMONS AND VERIFIED COMPLAINT

=============================================================

### NAPOLI SHKOLNIK PLLC

*Attorneys for*: Plaintiffs
360 Lexington Ave, 11th Floor
New York, New York 10017
(212) 397-1000

=============================================================

The undersigned attorney certifies pursuant to 22 NYCRR §130-1.1-a that he has read the within papers and that, to the best of his knowledge, they are not frivolous as that term is defined in 22 NYCRR §130-1.1(c).

        _____

        Hunter Shkolnik

=============================================================

Service of a copy of the within papers is hereby admitted.

Dated, _____

        _____

        ATTORNEY(S) FOR:

=============================================================

PLEASE TAKE NOTICE:

    ☐ NOTICE OF ENTRY

        that the within is a (certified) true copy of an    duly entered in the office of the clerk of the within named court on _____200__.

    ☐ NOTICE OF SETTLEMENT

        that an order    of which the within is a true copy will be presented for settlement to the HON.    one of the judges of the within named Court, at    on    200___ at_____ O'clock ___.M.

Dated, _____

        Yours, etc.

        NAPOLI SHKOLNIK PLLC